UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RONALD DAVIDSON,

                              Plaintiff,

        -vs-                                                    92-CV-0283C

TIM MURRAY, WALTER KELLY,
CHARLES BRUNELLE, JOHN PUTINAS,
JAMES PLESCIA, REV. EARL MOORE, and
the Estate of THOMAS A. COUGHLIN, III,

                              Defendants.

_____

APPEARANCES:    PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER, LLP (KEVIN M.
                HOGAN, ESQ., of Counsel), Buffalo, New York, for Plaintiff.

                ELIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF NEW
                YORK (STEPHEN F. GAWLIK, Assistant Attorney General, of
                Counsel), Buffalo, New York, for Defendants.


        In this action brought pursuant to 42 U.S.C. § 1983, plaintiff Ronald Davidson claims

that employees of the New York State Department of Correctional Services ("DOCS")

violated his First Amendment rights by denying his requests for a kosher diet for ten days

in October 1991 when he was transferred from the Clinton Correctional Facility to the Attica

Correctional Facility.[1]  Defendants have moved for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure (Item 200).  For the reasons that follow,

defendants' motion is granted.

_____

[1]In addition to the kosher diet claims in this case, plaintiff alleges that he was denied access to
legal materials, denied due process at a disciplinary hearing, and subjected to cruel and unusual
punishment at various times during his confinement at Attica (see Item 145, Second Amended
Complaint).  These "conditions of confinement" claims were separated from the kosher diet claims and
assigned to separate counsel (see Item 120).  Defendants have also moved for summary judgment
dismissing the conditions of confinement claims (Item 207), which will be dealt with in a separate order.

## BACKGROUND

Plaintiff is an inmate in the custody of DOCS, currently residing in the Shawangunk Correctional Facility in Wallkill, New York.  He originally commenced this action *pro se* in April 1992, and filed an amended complaint in January 1993 (Item 10) while he was an inmate at Attica.  He claims that on October 1, 1991, upon being informed that he was to be transferred from Clinton to Attica, he wrote to DOCS Commissioner Thomas Coughlin III,  Assistant Commissioner Rev. Earle Moore, and Administrative Assistant James Plescia  requesting that the kosher diet he was receiving at Clinton be continued during and immediately following his transfer (*see* Item 10, ¶ 5; Item 215, ¶ 4).  In his letter to Commissioner Coughlin, plaintiff stated his position that kosher diets "should automatically be provided to a prisoner upon any transfer, as I have always maintained" (10/1/91 Letter, attached to Davidson Declaration, Item 215, as Ex. A ).[2]

On October 2, 1991, plaintiff was transferred from Clinton to the Downstate Correctional Facility, and on October 3, 1991, he was transferred from Downstate to the Auburn Correctional Facility.  Plaintiff alleges that he made oral requests for a kosher diet at both Downstate and Auburn, but these requests were refused.  He arrived at Attica on October 4, 1991, and was confined to his cell.  He claims that upon his arrival, he wrote and spoke repeatedly to numerous administrative officials at Attica, including Superintendent Walter Kelly, First Deputy Superintendent Charles Brunelle, Deputy Superintendent of Programs Tim Murray, Jewish Chaplain Rabbi Schwartz, and Food Services Administrator John Putinas.  According to plaintiff, from the time he found out he

---

[2]This letter was stamped "received" by the Commissioner's Office on October 4, 1991 (Item 215, Ex. A).

was being transferred to Attica, he made nearly twenty oral and written requests for continuation of his kosher diet to every DOCS official he could think of, but he did not receive kosher meals until October 12, 1991–a period of ten days (Item 215, ¶ 6; *see also* Ex. B, Transcript of Davidson Deposition 10/1/03, at 25).

As part of his duties as Deputy Superintendent for Programs, defendant Murray was in charge of all program activities at Attica, including the kosher diet program.  Under DOCS procedures and guidelines in effect at the time of the events set forth in the pleadings, when an inmate who was transferred to Attica notified facility staff that he wished to participate in the kosher diet program, the request would be reported to the Deputy Superintendent for Programs, who then would notify the Rabbi.  The Rabbi would determine whether the inmate was in fact Jewish, and whether the inmate could be transferred to the Greenhaven Correctional Facility to participate in the hot kosher diet program available there.  If the Rabbi determined that the inmate was Jewish but could not be transferred to Greenhaven, the Deputy Superintendent would instruct the food service administrator to place the inmate on the "cold Alternative to the Non-Kosher food program," referred to at Attica as the "Alternative Diet" (Murray Declaration, Item 203, ¶¶ 4-6; *see also* DOCS Classification 5.501, attached to Item 203 as Ex. A).

 In this case, the record reflects that on October 8, 1991–four days after plaintiff arrived at Attica– Deputy Superintendent Murray was verbally advised by Rabbi Schwartz that plaintiff had requested the Alternative Diet.  Murray instructed Rabbi Schwartz to determine whether plaintiff was Jewish, and whether he was eligible for transfer to Greenhaven.  That same day, Rabbi Schwartz interviewed plaintiff and confirmed that he was eligible to receive a kosher diet.  Rabbi Schwartz reported back to Murray that plaintiff

was Jewish, but was not eligible for transfer to Greenhaven.   By memorandum dated October 9, 1991, Murray  instructed defendant Putinas to place plaintiff on the Alternative Diet (Item 203, ¶¶ 7-8 & Ex. B).  Three days later (on October 12), plaintiff began receiving kosher food.

Plaintiff claims that as the result of the conduct of defendants Murray, Kelly, Brunelle, Putinas, Plescia, Moore, and Coughlin in response to his requests for a kosher diet, he was deprived of a basic tenet of his Jewish faith for ten days, in violation of the Free Exercise Clause of the First Amendment to the United States Constitution. Defendants move for summary judgment dismissing the kosher diet claim on the ground that the facts as alleged by plaintiff do not amount to a constitutional violation, and on the ground of qualified immunity.   Defendants also seek summary judgment in favor of defendants Kelly, Brunelle, Putinas, Plescia, Moore, and Coughlin for lack of personal involvement in the alleged constitutional violation.

## DISCUSSION

### I.    Summary Judgment Standards

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In determining whether summary judgment is appropriate, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir. 1993).

The moving party has the initial burden to establish the basis for its motion and to identify the matters it "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if the fact has some effect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). The substantive law determines what facts are material to the outcome of the litigation. *See Anderson*, 477 U.S. at 248. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party meets its burden, the non-moving party has the burden of presenting "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Christian Dior-New York, Inc. v. Koret, Inc.*, 792 F.2d 34, 38 (2d Cir. 1986) (non-moving party must provide court with some basis to believe its "version of relevant events is not fanciful"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

II.     **The Free Exercise Clause**

The Free Exercise Clause of the First Amendment manifests an "unflinching pledge to allow our citizenry to explore diverse religious beliefs in accordance with the dictates of their conscience." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984).   As the Second Circuit has repeatedly recognized, prison inmates retain their constitutional right to the free exercise of their religious beliefs even when incarcerated. *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (citing *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)). An inmate is therefore entitled to a reasonable accommodation of his or her religious beliefs, including  religious dietary practices. *Id.* (citing *Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992) ("prison officials must provide a prisoner a diet that is consistent with his religious scruples").

In assessing whether a prisoner's right to free exercise of religion has been reasonably accommodated, courts are required to balance the constitutional interest at stake against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951 (1990), *quoted in Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).  Prisoners' free exercise claims are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Ford*, 352 F.3d at 588.  While the courts have struggled with various formulations and applications of this test, at bottom it requires the court to determine whether the challenged practice of

prison officials is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone*, 482 U.S. at 353.

In *Davidson v. Zon*, No. 94-CV-0184 (W.D.N.Y. September 10, 2002) (No. 94-CV-0184, Item 194),[3] this court applied the standards enunciated in *Turner* and *O'Lone* to assess Mr. Davidson's claims regarding his removal from Attica's Alternative Diet roster for an extended period between October 1993 and May 1994 (when he was transferred to the Auburn Correctional Facility). Plaintiff claimed in the *Zon* case that DOCS officials violated his free exercise rights when they removed him from the roster for failing to adhere to DOCS' policy requiring Alternative Diet inmates to attend all meals in the mess hall. The court granted summary judgment in favor of the defendants on this claim, finding the mandatory attendance policy to be reasonably related to Attica's legitimate penological interest in managing its Nutritional Services budget. *Davidson v. Zon*, No. 94-CV-0184, at 11-14.

As a separate cause of action in *Zon*, plaintiff claimed that DOCS officials violated his free exercise rights by refusing to act upon his repeated requests for reinstatement to the Alternative Diet roster in March 1994, when he was sent to Attica's Special Housing Unit for disciplinary segregation. The court granted defendants' motion for summary judgment dismissing this claim as well, finding as follows:

> . . . DOCS' policy requires inmates who are suspended from participation in the Alternative Diet program for failure to comply with the mandatory attendance policy to go through a reevaluation process, including approval by both the Jewish Chaplain and the Deputy Superintendent for Program

---

[3] By order and mandate dated November 10, 2004 (No. 94-CV-0184, Item 209), the Second Circuit dismissed plaintiff's appeal from the court's September 10, 2002 decision and order in *Davidson v. Zon* for failure to file a Prisoner Authorization form in a timely manner.

> Services, to substantiate the inmate's Judaic background and intent to strictly observe Jewish dietary law.  This process, as part of the overall policy already found by this court to be reasonably related to DOCS' legitimate interest in controlling its Nutritional Services budget, necessarily entails some level of institutional delay.  Plaintiff has failed to allege or make a factual showing to suggest that the delay between the time his request for reinstatement was sent to the facility Chaplain on April 14, 1994, and his transfer out of Attica on May 2, 1994, constitutes anything more than typical and acceptable institutional delay which does not implicate the Free Exercise Clause.

*Id.* at 18 (internal quotation marks and citations omitted).

The same rationale applies with equal force in this case.  Like the policy at issue in *Zon*, which required inmates suspended from the Alternative Diet roster to go through a reevaluation process, the policy in effect at the time of plaintiff's transfer to Attica in October 1991 required arriving inmates who requested kosher meals to obtain verification of program eligibility from the facility's chaplain.  It is beyond dispute that this policy had "a valid, rational connection" to the orderly administration of a program that allowed the facility to accommodate the religious dietary needs of its inmate population.  *Turner*, 482 U.S. at 89; *see also Resnick v. Adams*, 348 F.3d 763, 768-71 (9th Cir. 2003) (under *Turner* analysis, federal Bureau of Prisons' requirement that inmates requesting kosher diet submit written application and obtain chaplain's approval is reasonably related to legitimate penological interest).  Plaintiff requested placement on the Alternative Diet roster immediately upon his arrival at Attica on October 4, 1991.  On October 8, Rabbi Schwartz interviewed plaintiff and confirmed that he was eligible to receive a kosher diet, in accordance with the requirements of DOCS Classification 5.501 (Item 203, Ex. A).  Rabbi Schwartz then advised Deputy Superintendent Murray as to plaintiff's eligibility, and Murray sent a memorandum on October 9 instructing the Food Service Administrator to place

plaintiff on the Alternative Diet roster (*id.*, Ex. B).   Plaintiff began receiving kosher food on October 12.

Viewing these undisputed facts in the light most favorable to plaintiff, and drawing all reasonable inferences in his favor, the delay attributable to Attica officials in responding to plaintiff's request for a kosher diet in October 1991 was no more than eight days.  As in *Zon*, plaintiff has presented no evidence to show or suggest that the time it took to process his request constitutes anything more than "typical and acceptable institutional delay which does not implicate the Free Exercise Clause."  *Zon*, No. No. 94-CV-0184, at 18 (ruling on 18-day delay between transmission of request for reinstatement and transfer to another facility); *see also Holiday v. Giusto*, 2004 WL 1792466, at * (D.Or. August 10, 2004) (18-day delay in processing Muslim plaintiff's request for religious diet did not violate Free Exercise Clause; delay did not substantially burden plaintiff's religious practice, and resulted from verification procedures in which prison officials had legitimate penological interest), *report and recommendation adopted*, 2004 WL 2403823 (D.Or. October 26, 2004); *cf. Stewart v. Wright*, 101 F.3d 704 (7th Cir. 1996) (Table; text in Westlaw at 1996 WL 665978) (*de minimis* two-week delay in arranging for pork-free diet upon inmate's transfer to another facility does not implicate Constitution).

Accordingly, no reasonable jury could find in favor of plaintiff on his claim that he was denied his rights under the Free Exercise Clause upon his transfer to Attica in October 1991, and summary judgment in defendants' favor is appropriate dismissing plaintiff's kosher diet claim.

### III.    Lack of Personal Involvement

Defendants also seek summary judgment dismissing the complaint against defendants Kelly, Brunelle, Putinas, Plescia, Moore, and Coughlin for lack of personal involvement in the alleged constitutional violations.  Having found that the defendants are entitled to summary judgment dismissing plaintiff's claim that he was denied a kosher diet upon his transfer to Attica in October 1991, defendants Kelly, Brunelle, Putinas, Plescia, Moore, and Coughlin cannot be found to be personally responsible for any constitutional violation in this case.  *See Muhammad v. Imam Warithu-Deen Umar*, 98 F. Supp.2d 337, 345 (W.D.N.Y. 2000); *see also Rabb v. McMaher*, 1998 WL 214425, at *7 (N.D.N.Y. April 24, 1998).

### IV.    Qualified Immunity

Finally, defendants seek summary judgment on the ground of qualified immunity. Because the court has found summary judgment to be appropriate dismissing plaintiff's § 1983 claim in its entirety, the court need not address defendants' assertion of qualified immunity.  *See O'Kane v. Keane*, 1997 WL 3271, at *9 (S.D.N.Y. January 3, 1997), *aff'd*, 159 F.3d 1347 (2d Cir. 1998); *Dexter v. Thompson*, 1995 WL 495072, at *5-6 (W.D.N.Y. August 18, 1995) (citing cases).

### <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion for summary judgment (Item 200) is granted, and the complaint is dismissed to the extent it seeks relief under 42 U.S.C. § 1983 for the alleged denial of plaintiff's right to receive a kosher diet upon being transferred to

the Attica Correctional Facility in October 1991.  The Clerk of the Court is directed to enter

judgment in favor of defendants on plaintiff's kosher diet claim.

This decision and order does not address plaintiff's "conditions of confinement"

claims set forth in the Second Amended Complaint in this case (Item 145), which are

subject to a separate order.

Pursuant to 28 U.S.C. § 1915(a)(3), the court certifies that an appeal from this

decision and order may not be taken *in forma pauperis* because such an appeal would be

frivolous and cannot be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438,

444-45 (1962).  Accordingly, leave to appeal to the Court of Appeals as a poor person is

denied.  Further requests to proceed on appeal as a poor person should be directed, on

motion, to the United States Court of Appeals for the Second Circuit, in accordance with

Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:  May 10 , 2005

p:\opinions\92-283.may0505

-11-