UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RONALD DAVIDSON,

               Plaintiff,

     -vs-                         92-CV-0283C

TIM MURRAY, WALTER KELLY,
CHARLES BRUNELLE, JOHN SHERLOCK,
ROBERT MALLOY, THOMAS MONIN, and
the Estate of THOMAS A. COUGHLIN, III,

               Defendants.

_____

APPEARANCES:   O'SHEA, REYNOLDS & CUMMINGS (WILLIAM A. LONG, JR., ESQ., of Counsel), Buffalo, New York, for Plaintiff.

                      ELIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF NEW YORK (DARREN LONGO, Assistant Attorney General, of Counsel), Buffalo, New York, for Defendants.

     In this action, brought pursuant to 42 U.S.C. § 1983, plaintiff Ronald Davidson claims that employees of the New York State Department of Correctional Services ("DOCS") subjected him to unconstitutional conditions of confinement during various periods of incarceration at the Attica Correctional Facility.[1]  Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Item 207), and plaintiff has cross-moved for summary judgment on his first cause of action (Item 224).

---

[1]In addition to the conditions of confinement claims in this case, plaintiff alleged that he was denied his right to kosher meals for ten days in October 1991 (*see* Item 10).  The kosher diet claim was separated from the conditions of confinement claims and assigned to separate counsel (*see* Item 120). By order dated May 10, 2005 (Item 227), this court granted defendants' summary judgment motion dismissing the kosher diet claim.

For the reasons that follow, defendants' motion is granted, and plaintiff's cross-motion is denied.

## BACKGROUND

Plaintiff is an inmate in the custody of DOCS, currently residing in the Shawangunk Correctional Facility in Wallkill, New York.  He originally commenced this action *pro se* in April 1992, and filed an amended complaint in January 1993 (Item 10) while he was an inmate at Attica.  Upon assignment of counsel, plaintiff filed a Second Amended Complaint (Item 145) setting forth the following five causes of action:

1. Denial of legal writing supplies and law books, in violation of his First Amendment right to petition the courts for redress and in retaliation for having filed multiple lawsuits and grievances against DOCS officials and employees (Item 145, ¶¶ 10-25).

2. Denial of due process at a Tier II disciplinary hearing which took place on October 17, 1991, based on the open hostility and bias of the hearing officer (*id.*, ¶¶ 26-32).

3. Denial of basic hygiene items and cleaning materials while housed in a cell in Attica's general population, in violation of his Eighth Amendment right to be free from cruel and unusual punishment, and in retaliation for having filed multiple lawsuits and grievances (*id.*, ¶¶ 33-38).

4. Denial of hygiene items, cleaning materials, writing implements, and several other basic necessities while housed in Attica's Special Housing Unit ("SHU") between July 1992 and January 1993, in violation of his First Amendment rights and his Eighth Amendment right to be free from cruel and unusual punishment (*id.*, ¶¶ 39-41).

5. Denial of the same basic necessities while housed in Attica's SHU between January and February 1993, and use of unnecessary and excessive force during a cell transfer, in violation of his Eighth Amendment right to be free from cruel and unusual punishment (*id.*, ¶¶ 49-54).

Defendants now move for summary judgment dismissing the Second Amended Complaint on the following grounds:

1.      Failure to allege facts sufficient to establish a *prima facie* claim of denial of access to the courts.

2.      Failure to allege facts sufficient to establish a *prima facie* due process claim.

3.      Failure to allege facts sufficient to establish a *prima facie* claim that the conditions of confinement amounted to cruel and unusual punishment.

4.      Failure to allege facts sufficient to establish a *prima facie* claim of excessive force.

5.      Failure to allege facts sufficient to establish a *prima facie* retaliation claim.

(*See generally* Item 210).

Plaintiff has responded, and has filed a cross-motion for summary judgment in his favor on his first cause of action for denial of access to the courts (*see generally* Item 225).

For the following reasons, defendants' summary judgment motion is granted, and plaintiff's cross-motion is denied.

## DISCUSSION

**I.      Summary Judgment Standards**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986).  In determining whether summary judgment is appropriate, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir. 1993).

The moving party has the initial burden to establish the basis for its motion and to identify the matters it "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" only if the fact has some effect on the outcome of the suit.  *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  The substantive law determines what facts are material to the outcome of the litigation.  *See Anderson*, 477 U.S. at 248.  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Once the moving party meets its burden, the non-moving party has the burden of presenting "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Christian Dior-New York, Inc. v. Koret, Inc.*, 792 F.2d 34, 38 (2d Cir. 1986) (non-moving party must provide court with some basis to believe its "version of relevant events is not fanciful").  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

## II.     Access to the Courts

In his first cause of action, plaintiff alleges that in October 1991 Corrections Officer David Hodan (not a defendant in this action) refused plaintiff's oral and written requests for legal writing supplies.  Plaintiff claims that he subsequently wrote to DOCS Commissioner Thomas Coughlin, Attica Superintendent Walter Kelly, and Deputy Superintendents Tim Murray, Charles Brunelle, and Albert Hall complaining about Officer Hodan's denial of his request for legal writing supplies, to no avail.  He also alleges that after he was placed in "keeplock"[2] confinement on October 11, 1991, he made numerous requests for specific law books, but Officer Hodan refused these requests as well.  He claims that he once again complained to defendants Coughlin, Kelly, Murray, and Brunelle, but no action was taken. Plaintiff alleges that these defendants are "ratifying the actions and denials of Officer Hodan . . . in an effort to make Plaintiff's access to Courts and attorneys as difficult as possible " (Item 145, ¶ 23), and that this is being done in retaliation for having filed lawsuits and grievances against Attica officials in the past (*id.* at ¶ 24).

The United States Constitution guarantees prisoners a "meaningful right of access to the courts . . ." *Bounds v. Smith*, 430 U.S. 817, 830 (1977).  This right encompasses the requirement that prison authorities "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.  As the Supreme Court recognized in *Bounds,* "[i]t is indisputable that indigent inmates must be provided at state expense with

---

[2]"Keeplock" is the DOCS term for a form of disciplinary confinement in which the inmate is confined to his cell for 23 hours a day, deprived of participation in normal prison routine, and denied contact with other inmates.  *See* 7 N.Y. Comp. Codes R. & Regs. § 251-1.6; *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995).

paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Bounds*, 430 U.S. at 824-25.

In *Lewis v. Casey*, 518 U.S. 343 (1996), the Court redefined the scope of inmates' constitutional right of access to courts, holding that prisoners do not have "an abstract, freestanding right to a law library or legal assistance . . . ." *Id.* at 351. "In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds*, 430 U.S. at 825). The Court found that in order to establish a violation of the fundamental right of access to courts, an inmate must show more than a refusal to provide legal materials. Rather, the inmate must demonstrate "actual injury" by showing "that a nonfrivolous legal claim had been frustrated or was being impeded" due to the action or inaction of prison officials. *Id.* at 353. As stated in *Lewis*:

> Insofar as the right vindicated by *Bounds* is concerned, meaningful access to the courts is the touchstone, and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Id.* at 351.

Upon review of the record as a whole, including the materials submitted to the court in connection with the present summary judgment motions, it is clear that plaintiff cannot meet this burden. For example, as set forth in the supporting declaration of defense

counsel (Item 209), between October 1991 and November 1994 (which plaintiff alleges is the period of his confinement at Attica relevant to the issues in this case), plaintiff filed no fewer than six federal civil rights actions in the district courts of the Northern, Southern, and Eastern Districts of New York, and filed at least sixteen separate appeals in the Second Circuit (Item 209, ¶ 5). He also filed no fewer than eighteen separate lawsuits in New York State courts (*id.* at ¶ 5). In addition, this court's review of the Clerk's historical docket records indicates that plaintiff filed (or attempted to file) at least nine separate federal civil rights actions[3] in the Western District of New York–including the present action–during this same period. By the court's reckoning, this undisputed evidence shows that plaintiff commenced no fewer than forty-nine separate lawsuits in the state and federal courts during the time in which he alleges his right of access to the courts was restricted by prison officials at Attica.

When questioned about this at his deposition in this case (which took place by videoconference on October 1, 2003), plaintiff testified as follows:

Q:    [D]uring the period from 1991 to 1994, did you have any active
       lawsuits, federal or state?

A:    Oh, yes, of course.

---

[3]These are:
*Davidson v. O'Connell*, No. 91-cv-811C (filed 12/16/91)
*Davidson v. Kelly*, No. 92-cv-42C (filed 01/21/92)
*Davidson v. Kelly*, No. 92-cv-44S (filed 01/21/92)
*Davidson v. Murray*, No. 92-cv-283C (filed 04/28/92)
*Davidson v. Sarra*, No. 93-cv-507C (filed 06/14/93)
*Davidson v. Mann*, No. 93-cv-508C (filed 06/14/93)
*Davidson v. Zon*, No. 94-cv-184C (filed 03/14/94)
*Davidson v. Posner*, No. 94-cv-230C (filed 03/25/94)
*Davidson v. Kelly*, 94-cv-809C (filed 11/09/94)

Q:      . . . And were there any lawsuits that you tried to file during this period that you were unable to file?

A:      I don't know–I cannot recollect as I sit before you today and say there was any action that I couldn't file.  I can say with certainty that many of the actions that I had already filed that were already pending and that I was *pro se* in, I couldn't really do meaningful research and advancement.

(Item 209, Ex. A, at p. 90).

In this regard, this court's docket records currently available for public review reflect that, in just the nine civil rights actions commenced in the Western District of New York between October 1991 and November 1994, plaintiff made over one hundred written submissions in the form of letters to the court, motions, affidavits, memoranda of law, amended pleadings, requests for injunctive relief, discovery, notices of appeal, and other documents filed during the period in which he alleges the defendants restricted his right of access.  In any event, the right outlined in *Bounds*, and further defined in *Lewis*, does not require prisons to adopt and maintain legal assistance policies that ensure their inmates' ability "to *litigate effectively* once in court."  *Lewis*, 518 U.S. at 354 (emphasis in original).  Constitutional right of access to the courts "does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts . . . ."  *Id.* at 360.

Based on this analysis, no reasonable juror could find that prison officials hindered plaintiff's efforts to pursue his legal claims during his incarceration at Attica between October 1991 and November 1994, and there is no genuine issue for trial on plaintiff's claim that he was denied access to the courts.  Likewise, in the absence of any showing that the conduct of prison officials deterred plaintiff from exercising his right of access to

the courts, no reasonable juror could find in his favor on his retaliation claim.  *See Dawes*

*v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001) ("Only retaliatory conduct that would deter a

similarly situated individual of ordinary firmness from exercising his or her constitutional

rights constitutes an adverse action for a claim of retaliation.").

Accordingly, summary judgment in favor of defendants is appropriate dismissing the

first cause of action.

**III.     Due Process**

In his second cause of action, plaintiff alleges that he was denied due process at

a Tier II[4] disciplinary hearing conducted at Attica on October 16 and 17, 1991 by DOCS

Lieutenant John Sherlock.  At the conclusion of the hearing, Lt. Sherlock found plaintiff

guilty of violating inmate disciplinary rules 102.10, 107.10 and 107.11,[5] and imposed a

penalty of thirty days in keeplock and loss of telephone privileges (*see* Hearing Transcript,

Item 209, Ex. B, p. 33).

---

[4]The New York State prison regulations establish three "tiers" of hearings to determine allegations of inmate disciplinary rule violations, structured generally by range of punishment.  A "Tier II" disciplinary hearing involves the potential sanctions of "counsel/reprimand, loss of privileges and/or confinement for up to 30 days, restitution, and/or imposition of work assignments, plus mandatory surcharge." *Brown v. Busch*, 954 F. Supp. 588, 592 n. 6 (W.D.N.Y. 1997) (citing 7 N.Y. Comp. Codes R. & Regs. Part 253).

[5]Rule 102.10 of the Institutional Rules of Conduct, as set forth in the Standards of Inmate Behavior established by the New York State prison regulations, provides:
>    Inmates shall not, under any circumstances make any threat, spoken, in writing, or by gesture.

7 N.Y. Comp. Codes R. & Regs. § 270.2(B)(3)(I).
>    Rule 107.10 provides:
>    Inmates shall not physically or verbally obstruct or interfere with an employee at any time.

7 N.Y. Comp. Codes R. & Regs. § 270.2(B)(8)(I).
>    Rule 107.11 provides:
>    Inmates shall not harass employees or any other persons verbally or in writing.  This includes, but is not limited to, using insolent, abusive, or obscene language or gestures, or writing or otherwise communicating messages of a personal nature to employees or volunteers.

7 N.Y. Comp. Codes R. & Regs. § 270.2(B)(8)(ii).

To succeed on his due process claim, plaintiff must establish "both that the confinement or restraint creates an 'atypical and significant hardship' . . . , and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). The Second Circuit generally requires that in order to determine whether an inmate's liberty interest has been affected by a particular confinement imposed as a disciplinary sanction, the district court must examine the circumstances of the confinement and "identify with specificity the facts upon which its conclusion is based." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citing *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997), and *Miller v. Selsky*, 111 F.3d 7, 9 (2d Cir. 1997)). "However, in cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, the district court need not provide such detailed explanation of its reasoning." *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.) (finding no evidence that 21-day pre-hearing keeplock confinement, which mirrored the conditions of other segregated inmates, extended the plaintiff's sentence in an unexpected manner, or was atypical in any way), *cert. denied*, 119 U.S. 246 (1998).

Although the courts have refrained from adopting a "bright line" rule that a certain period of segregated confinement automatically fails to implicate due process rights, *see Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004), decisions in the Second Circuit have routinely found that the disciplinary sanction imposed on plaintiff in this case–thirty days keeplock confinement and loss of privileges–does not constitute "atypical or significant hardship" under *Sandin*. *See, e.g., Colon v. Russett*, 2004 WL 992703 (S.D.N.Y. May 5,

2004) (30 days in keeplock without access to phones, packages, or the commissary); *Troy v. Kuhlmann*, 1999 WL 825622 (S.D.N.Y. October 15, 1999) (same); *Davis v. State of New York*, 1999 WL 1390247 at *3-4 (W.D.N.Y. December 14, 1999) (same); *Williams v. Keane*, 1997 WL 527677, at *6 (S.D.N.Y. August 25, 1997) (citing cases); *cf. Vaughan v. Erno*, 8 Fed.Appx. 145, 2001 WL 540281 (2d Cir. 2001) (unpublished disposition; inmate failed to show that disciplinary sentence of thirty days in keeplock and loss of privileges for each of two misbehavior reports imposed atypical or significant hardship); *Garcia v. Miller*, 201 F.3d 431, 1999 WL 1212651 (2d Cir. 1999) (unpublished disposition; affirming dismissal of complaint containing no allegation that thirty-day keeplock confinement and loss of privileges, imposed without a hearing, was "atypical" or "significant"); *Boddie v. Carpenter*, 159 F.3d 1345, 1998 WL 538077 (2d Cir. 1998) (unpublished disposition; thirty-day keeplock confinement did not impose an atypical and significant hardship), *cert. denied*, 525 U.S. 1152 (1999). In line with these holdings, where the time spent in disciplinary segregation was "exceedingly short–less than the 30 days that the *Sandin* plaintiff spent in SHU . . . ," *Palmer*, 364 F.3d at 66, and there is no indication in the pleadings or in the record before the court that the plaintiff otherwise endured "unusual . . . conditions . . . ," *id.* at 66, the courts have had little difficulty finding as a matter of law that the plaintiff failed to establish a protected liberty interest. *See Colon v. Russett*, 2004 WL 992703, at *2; *see also Faison v. Hash*, 2004 WL 944523, at *5 (W.D.N.Y. April 23, 2004).

The Second Amended Complaint in this case, filed several years after the Supreme Court's decision in the *Sandin* case, contains no factual allegations to suggest that the disciplinary sanction of thirty days in keeplock and loss of telephone privileges imposed on

plaintiff by Lt. Sherlock on October 17, 1991 resulted in conditions of confinement which differed significantly from typical prison conditions. After thirteen years of litigation, plaintiff has presented no hint of proof to indicate that he could make such a showing. Accordingly, the court has little difficulty concluding that no rational juror could find in favor of plaintiff on his due process claim, and that summary judgment in favor of defendants is appropriate dismissing the second cause of action.

## IV.    Conditions of Confinement

In his third cause of action, plaintiff alleges that defendant Robert Malloy and other Corrections Officers at Attica "steadfastly and routinely denied [p]laintiff basic hygiene items such as toothpaste, soap and toilet tissue" (Item 145, ¶ 33), as well as "cell cleaning items" (*id.* at ¶ 37), in violation of his right to be free from cruel and unusual punishment, and in retaliation for his past lawsuits and grievances against Attica officials (*id.* at ¶ 38). He claims that defendants Kelly, Brunelle, and Coughlin are also liable because they failed to respond to his complaints about these denials (*id.* at ¶ 34).

This claim falls within the ambit of the Eighth Amendment, which prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Ingraham v. Wright*, 430 U.S. 651, 670 (1977); *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003). In order to prevail on an Eighth Amendment "conditions of confinement" claim, the plaintiff must satisfy both an objective element and a subjective element. *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). To satisfy the objective element, the plaintiff must demonstrate that the conditions of his confinement resulted in "unquestioned and serious deprivations of basic human

needs" or "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (quoted in *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)); *see Jolly*, 76 F.3d at 480.  As recognized by the Supreme Court in *Rhodes*, "the Constitution does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349, and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, *quoted in Anderson*, 757 F.2d at 35; *see also Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.") (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *Smith v. Coughlin*, 577 F.Supp. 1055, 1060-61 (S.D.N.Y. 1983) ("Although the eighth amendment bars more than physical torture, it does not reach conditions of incarceration that incidentally impose unpleasant consequences on an inmate . . . ."), *aff'd*, 748 F.2d 783 (2d Cir. 1984).  "Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps  v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002).

Furthermore, while "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone," *Wilson v. Seiter*, 501 U.S.  294, 304 (1991) (emphasis in original), the objective element is satisfied "only when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise--for example, a low cell temperature at night combined with a failure to issue blankets." *Id.*

> To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Id.* at 305 (citations omitted).

The subjective element requires a plaintiff to show that the defendant acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In cases involving prison conditions, that state of mind requirement is one of "deliberate indifference to inmate health or safety." *Id.*; *see also Trammell*, 338 F.3d at 162-63 (explaining difference between state of mind requirements for "excessive force" claims and for "conditions of confinement" claims). As stated by the Second Circuit in *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995):

> Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. . . . [A] prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id.* at 66 (quoting *Farmer*, 511 U.S. at 837).

In this case, plaintiff alleges in the Second Amended Complaint that he was "steadfastly and routinely" or "frequently" denied "basic hygiene items such as toothpaste, soap [,] . . . toilet tissue . . . and cell cleaning items" (Item 145, ¶¶ 33, 37). When asked at his deposition to elaborate on these allegations, plaintiff testified as follows:

> Q:   Who–first of all, tell me what it is that you're saying happened or did not happen to you.

-14-

A:     The complaint speaks for itself, so I will just read to you what the complaint says.

Q:     Well, I want you to tell me what you remember about this, because the complaint speaks for itself, I can read the complaint, I want to hear what you have to say about it, though.

A:     I have to say exactly what the complaint says.

Q:     Well, okay.  So who is it that you're saying deprived you of these items?

A:     All of the people mentioned in the complaint.  Do you want me to read the complaint?

Q:     No, I don't want you to read the complaint.

A:     I mean, I can go through this game with you, if you think it's going to accomplish something, but if you want I will just stand here and read you the complaint.

Q:     No, I don't want you to read me the complaint.  Just like we've been doing all along, you've been testifying to more than appears in the complaint, because you can't possibly write everything down about an incident.  What I want to know is the specifics about the complaint that you're making about my clients.  You're saying that they deprived you of hygiene items.  I want to know who you asked for those items, when you asked and how you asked and what response you got.  Did you do it in writing?  Did you do it verbally?

A:     I did it in writing and verbally.  All of my notes and files, as you know, were stolen at Wende Correctional Facility, in or about March, 1999, and the complaint here speaks volume[s].  You say you want detail.  Well, to give you an example, paragraph thirty-six, cell block officers Denise Kachelmeyer, Ken Zydel, Corona, Kewalewski, Robert Malloy and others, some of whose names are at the present unknown to me, have steadfastly and routinely denied me basic hygiene items such as toothpaste, soap and toilet tissue.  The aforementioned items are required by 9 NYCRR as well as the DOCS directive number 4009, said items are supposed to be issued as needed and upon request.  Now, we can read–I can read the whole complaint and we could make this into a filibuster, but I respectfully submit this is detail, but if you want to focus on minutiae, be my guest.

Q:     Are you saying that for three years you didn't have any toilet paper?

A:      That is not what the complaint said.  For three years–

Q:      You have said they steadfastly denied you toilet paper.  What do you
        mean by steadfastly?  What time period are we talking about?

A:      From November 1990–I'm sorry, from the time I got to Attica, which
        was around October of 1991, to the time I left there.  It was a constant
        struggle to get adequate basic toilet items and cleaning supplies, such
        as disinfectant or soap bowls or scouring powder, mop broom, a toilet
        bowl brush and it was a constant struggle.  You had to ask and you
        had to cajole and you had to sometimes threaten.   When I say
        threaten, tell them if I didn't get this I'm going to write to the
        commissioner or the superintendent.  The best way I can sum it up is
        they were just constantly, constantly busting your chops about getting
        the most basic human needs that a human being is entitled to that are
        traditional standards of decency that this country requires.

Q:      So are you saying that you did or didn't get these things?

A:      Sometimes I got them after this whole lengthy process that I just
        characterized; sometimes I didn't get them and I had to circumvent
        the normal procedure to get them.

Item 209, Ex. A, pp. 126-30.

        Even accepting this testimony as credible, and the facts alleged as true, no

reasonable juror could find that plaintiff has satisfied the objective element of his Eighth

Amendment "conditions of confinement" claim.  Based on the totality of the circumstances

presented on the record after ample opportunity for discovery during the thirteen-year

history of this case, the conditions complained of in the third cause of action amount to no

more than occasional or temporary deprivations of personal hygiene items, with no

testimony or proof to indicate that plaintiff suffered any "specific deprivation of a single

human need . . . ," *Wilson*, 501 U.S. at 305, or other accompanying harm.  Under Supreme

Court precedent and the holdings in cases decided within the Second Circuit, it is clear that

any inconvenience or unpleasantness plaintiff might have endured as a result of his

"constant struggle to get adequate basic toilet items and cleaning supplies" did not rise to the level of "unquestioned and serious deprivations of basic human needs" necessary to establish an Eighth Amendment violation.  *Rhodes*, 452 U.S. at 347; *see also  McNatt v. Unit Manager Parker*, 2000 WL 307000, at *4 (D.Conn. January 18, 2000) (totality of conditions in restrictive housing unit, including stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet paper for one day; no toiletries or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly; and smaller food portions, while not pleasant, did not rise to level of Eighth Amendment violation); *Mabery v. Keane*, 1998 WL 148386, at *8 (S.D.N.Y. March 30, 1998) (conclusory allegations of unsanitary conditions from lack of cleaning supplies, infrequent extermination of housing units, and poor ventilation in shower and bathroom areas failed to state claim for Eighth Amendment violation); *Fisher v. Department of Correction*, 1995 WL 608379, at *5 (S.D.N.Y. October 16, 1995) (prison's failure to provide inmate with toothpaste and soap for eight consecutive days, lighting for twenty days, and hot food "65 percent of the time" did not rise to level of Eighth Amendment violation); *Thomas v. Smith*, 559 F.Supp. 223, 224 (W.D.N.Y. 1983) (complaint alleging unconstitutional denial of basic hygiene items such as deodorant, soap, shampoo while confined in Attica's SHU dismissed as frivolous).

Likewise, on this record, no reasonable juror could find that plaintiff has satisfied the subjective element – *i.e.*, that any of the named defendants knew plaintiff's need for personal hygiene and cleaning items posed an excessive risk to his health or safety at any time, yet disregarded that risk.  Plaintiff's allegation that "the intentional and malicious

denial" of these items "subject[ed him] to filthy conditions" (Item 145, ¶ 37), standing alone and not amplified by discovery, is insufficient to raise issues of fact to be determined at a trial.  As Rule 56 makes clear, where a motion for summary judgment is properly made and supported, the opposing party "may not rest upon the mere allegations" in its pleadings, but instead must present probative evidence showing there is a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e); *Thomas v. Keane*, 2001 WL 410095, at *2 (S.D.N.Y. April 23, 2001).  This burden is not altered simply because plaintiff is a prison inmate who proceeded *pro se* through the first seven years of this litigation. "[A]t some point in a law suit even *pro se* litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief.  The summary judgment stage is an appropriate juncture to identify the real issues in a case." *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986).

Mirroring the allegations in his third cause of action (*see* Item 145, ¶¶ 33-38), plaintiff testified at his deposition that he verbally advised several Attica employees, including defendants Malloy, Murray, Brunelle, and Kelly, about his need for personal hygiene items, to no avail (*see* Item 209, Ex. A, pp. 133-36).  However, there is no information in the materials submitted in connection with this motion, or elsewhere in the extensive court records, which would provide a basis for a reasonable juror to find that this need posed a substantial risk of serious harm to plaintiff's health or safety.  Upon careful review of the record presented to the court, it is evident that plaintiff has not deposed these named defendants or any other Attica employee or official who might be expected to provide relevant testimony as to his or her knowledge of the conditions of plaintiff's

confinement during the pertinent period, and there is no indication that further depositions or discovery at this stage of the proceedings–some thirteen years after the occurrence of the facts alleged in the pleadings–would aid the factfinder in making this critical determination.

Based on this record, the court finds that plaintiff has failed to come forward with competent and admissible evidence to create a genuine issue of material fact with respect to either the objective element or the subjective element of his Eighth Amendment "conditions of confinement" claim in this case.  Likewise, he has failed to present any proof to show or suggest a causal connection between the alleged denials and his persistent filing of lawsuits and grievances against Attica officials that could lead a rational trier of fact to find in his favor on his retaliation claim.  *See Dawes*, 239 F.3d at 492.  Accordingly, summary judgment in favor of defendants is appropriate dismissing the third cause of action.

## V.    SHU Conditions

In his fourth cause of action, plaintiff recites the following laundry list of "denials and unlawful conditions" which he claims amounted to cruel and unusual punishment during his confinement in Attica's SHU at various times in 1992 and 1993:

> [A]dequate cold weather clothing and footwear was refused to him which made it impossible . . . to use the exercise cages during inclement and sub-zero weather (including wind-chill factor); denied law library services on many occasions; denied a full size toothbrush; denied a full size pen and pencil making writing extremely difficult or impossible at times; denied a pen altogether on occasions; provided with inadequate cell lighting which caused plaintiff severe eye strain[;] provided with inadequate heat; provided with inadequate blanket and requests for additional blankets were denied until 26 December 1992 when only one (1) additional blanket was issued; plaintiff was limited to only 50 stamps per month for non-legal mail, placing an illegal

limit on the amount of mail he could send and as such interfered with his First Amendment rights; was denied stamps altogether on occasions[;] was denied writing paper on numerous occasions; was denied his reading glasses; was denied his back brace for many months until it was finally issued; was denied orthopedic shoes; was denied ear plugs for tinnitus; was denied possession and/or use of prescribed eye drops and other medicines; was subjected to filthy cell conditions and was denied cell cleaning items on occasions such as rags, cleanser and disinfectant; "yard" doors were left open during cold weather by SHU officers and Executive Team members causing extremely cold drafts on the cell gallery; Plaintiff had numerous medical and dental appointments canceled while in SHU, eg. dermatology clinics, dentist "call outs", physician assistant call outs, etc.; broken or missing windows were left unrepaired for months during cold weather; Plaintiff was placed in a wire meshed "cell shielded" cell (CW-19) for over a month from 11/23/92 - 1/6/93 without justification or a deprivation order being issued.

(Item 145, ¶ 40).

While these allegations, taken as true and considered in their totality, might be found sufficient to satisfy the objective element of an Eighth Amendment "conditions of confinement" claim, *cf. Wilson*, 501 U.S. at 304-05, plaintiff has failed to produce any probative evidence in the face of defendants' properly framed summary judgment motion to raise a genuine issue of material fact with respect to the subjective element. The Second Amended Complaint itself contains no allegation that any particular named defendant was responsible for any of the alleged conditions, and there is no proof in the record before the court upon which a reasonable jury could base a finding that any of the named defendants knew of an excessive risk to plaintiff's health or safety posed by the conditions in Attica's SHU, yet disregarded that risk. As the court found with respect to plaintiff's third cause of action concerning the conditions of his confinement in Attica's general population, there is likewise no indication in the record that further depositions or discovery at this stage of the proceedings would aid the factfinder in making this

determination.  Simply stated, the time has come for plaintiff to produce some evidence to support his litany of complaints about the conditions of his SHU confinement, and he has failed to do so.

Based on the record before the court after ample time for discovery with the assistance of competent assigned counsel, plaintiff has failed to meet his burden to present specific facts showing that there is a genuine issue for trial on his claim that the conditions of his confinement in Attica's SHU violated the Eighth Amendment.  Accordingly, summary judgment in favor of defendants is appropriate dismissing the fourth cause of action.

## VI.    Excessive Force

Plaintiff claims in his fifth cause of action that during a cell transfer on February 1, 1993, Corrections Officer Woolrich (who is not named as a defendant) "placed handcuffs on Plaintiff's wrists extremely tight and twisted and yanked his wrists and arms.  He also placed his body weight onto Plaintiff's back when he pressed Plaintiff's face first [sic] into a corner of an elevator during the move . . . ," causing intense pain (Item 145, ¶¶ 50, 51).

As alluded to above, the showings necessary to establish the objective and subjective components of an Eighth Amendment "excessive force" claim differ somewhat from the showings required for a "conditions of confinement" claim.  To meet the objective standard in an excessive force claim, the plaintiff must establish that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions. *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).  In this regard, while a *de minimis* use of force will rarely suffice to

state a constitutional claim, the plaintiff is not required to show that the application of force resulted in serious injury. *Hudson v. McMillian*, 503 U.S. at 9. As explained by the Supreme Court in *Hudson*:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. . . . The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

*Id.* at 9-10 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 (1973); other citations omitted).

To meet the subjective requirement, the inmate must show that the prison officials involved "had a 'wanton' state of mind when they were engaging in the alleged misconduct." *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citations omitted). "[I]n excessive force cases, the 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Hudson*, 503 U.S. at 7).

> [T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.

*Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

As the court found with respect to plaintiff's "conditions of confinement" claims, despite ample opportunity for discovery during the thirteen-year pendency of this case, plaintiff has failed to provide sufficient evidence to create a genuine issue of material fact with respect to either the objective element or the subjective element of his Eighth Amendment "excessive force" claim.  Objectively, he alleges that he suffered "intense pain" as the result of tight handcuffs, twisting and yanking of his arms, and pressing his face against the wall of an elevator.  He also alleges that he complained about this pain to medical personnel.  Yet, he has not submitted pertinent medical records or any other evidence tending to show that he received any medical treatment as a result of this incident, or to otherwise establish that the pain he suffered at the hands of Officer Woolrich was "sufficiently serious" or "harmful enough to reach constitutional dimensions." *Romano*, 998 F.2d at 105; *see also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (claim that inmate was bumped, grabbed, elbowed, and pushed by two officers "not sufficiently serious or harmful" to meet objective element); *Brown v. Busch*, 954 F.Supp. 588, 595-96 (W.D.N.Y. 1997) (two officers pushed inmate into cell, causing small superficial abrasion on inmate's back; amount of force used was "clearly *de minimis*"), and cases cited therein; *Maguire v. Coughlin*, 901 F.Supp. 101, 104 (N.D.N.Y. 1995) (summary judgment granted dismissing inmate's claim that he was "physically manhandled" during prison transfer; court found no evidence "that the defendants used more than de minimus [sic] force against plaintiff, or that their use of de minimus [sic] force was repugnant to the conscience of mankind.").

Subjectively, plaintiff does not allege, and has failed to come forward with any evidence tending to show, that Officer Woolrich used force "maliciously and sadistically to

cause harm," rather than "in a good-faith effort to maintain or restore discipline" during the cell transfer on February 1, 1993.  Presented with similar circumstances, courts in the Second Circuit  have not hesitated to dismiss excessive force claims on the pleadings, or to grant summary judgment in favor of prison officials.  *See, e.g., Boddie*, 105 F.3d at 862 (summary dismissal affirmed where inmate failed to allege facts showing that defendants used force maliciously and sadistically to cause harm); *Reyes v. Koehler*, 815 F. Supp. 109, 114 (S.D.N.Y. 1993) (dismissal of excessive force claim on pleadings where inmate failed to allege facts meeting either objective or subjective component; "momentary act" of pushing an inmate against a wall was "of such limited duration as to belie the inference of malicious or sadistic intent to cause harm"); *Rodriguez v. Murphy*, 1994 WL 735859 (W.D.N.Y. January 3, 1995) (summary judgment granted in favor of defendants where inmate failed to show force causing head laceration and leg injury was used maliciously and sadistically to cause harm).

Based on this analysis, after more than adequate opportunity for discovery with the assistance of competent assigned counsel, plaintiff has not responded to defendants' properly framed summary judgment motion with sufficient evidence to create a genuine issue of material fact with respect to either the objective element or the subjective element of his Eighth Amendment "excessive force" claim in this case.  Accordingly, summary judgment in favor of defendants is appropriate dismissing the fifth cause of action.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Item 207) is granted, and the Second Amended Complaint (Item 145) is dismissed in its entirety.

-24-

Plaintiff's cross-motion for summary judgment (Item 224) is denied.  The Clerk of the Court is directed to enter judgment in favor of defendants.

Pursuant to 28 U.S.C. § 1915(a)(3), the court certifies that an appeal from this decision and order may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  Accordingly, leave to appeal to the Court of Appeals as a poor person is denied.  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN
United States District Judge

Dated: May   25        , 2005

p:\opinions\92-283.may1705